UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

QUADRILLE WALLPAPERS AND
FABRIC, INC.,

       Plaintiff,

 -against-          1:10-CV-1394 (LEK/DRH)

MARIA PUCCI, a/k/a MARIA
PUCCIARIELLO, and ROBERT
PUCCIARIELLO,

       Defendants.
_____

**MEMORANDUM-DECISION and ORDER**

**I. INTRODUCTION**

  Plaintiff Quadrille Wallpapers and Fabrics, Inc. ("Plaintiff" or "Quadrille") commenced this action on October 22, 2010, in the Supreme Court of the State of New York in Columbia County. Compl. (Dkt. No. 1-1) ("Complaint"). Plaintiff, a company that designs and markets custom fabric, wallpaper, and women's clothing, seeks monetary and injunctive relief against former employee Defendant Maria Pucci ("Defendant Pucci" or "Pucci") and her husband, Defendant Robert Pucciariello ("Defendant Pucciariello" or "Pucciariello"), both of whom Plaintiff alleges are unlawfully marketing Plaintiff's patterns and soliciting Plaintiff's clients. See id.

  Defendants filed a Notice of Removal (Dkt. No. 1) to the United States District Court in the Northern District of New York on November 17, 2010. On December 6, 2010, Defendants filed the present Motion requesting the Court to either transfer the present action to the United States Court in the Southern District of New York, or dismiss Plaintiff's Complaint for failure to state a cause of action. Defs. Mot. to Transfer or Dismiss ("TOD Motion") (Dkt. No. 6). Also presently before the

Court are Plaintiff's Cross-Motion, filed on January 31, 2011, opposing the TOD Motion and requesting the Court to remand the case ("Cross-Motion") (Dkt. No. 15); Defendants' Response to Plaintiff's Cross-Motion ("Defendants' Response") (Dkt. No. 17); and Plaintiff's Reply to Defendants' Response ("Plaintiff's Reply") (Dkt. No. 22). For the reasons that follow, the Court denies Defendants' Motion and grants Plaintiff's Cross-Motion to remand this case to the state court.

**II.   BACKGROUND**

Quadrille is a corporation engaged in the business of designing and selling custom fabric, wallpaper, and women's clothing. Compl. ¶ 1. Quadrille is incorporated in the state of New York, has outlet facilities in the town of Kinderhook in Columbia County, New York, and has showrooms in New York City, New York; Los Angeles, California; Dallas, Texas; and Dania Beach, Florida. Id. John Knott ("Knott"), who owns the company in addition to being its chief executive officer and president, resides in the town of Valatie in Columbia County, New York.[1] Id. ¶ 2.

Though incorporated in 1969, Quadrille did not begin designing and marketing women's clothing until 1998. Id. ¶ 7. Prior to this, Knott cultivated client relationships with friends, their acquaintances, and prior clients. Id. ¶ 9. Quadrille has continued to establish client relationships through retail sales at its showrooms around the country, as well as through its trunk shows and select vendors, but its client base has mostly been established by word of mouth and mostly consists of private individuals who have ongoing relationships with Knott and the company. Id. ¶¶ 10-11. Quadrille possesses lists of and details about its clients, all of which, the company states, are treated

---

[1] Quadrille's certificate of incorporation states that its principal place of business is in New York City, although Quadrille claims that it now conducts business "largely from Columbia County." Compare del Paral Aff. ¶¶ 6-7, Exs. C and D with John Knott Aff. (Dkt. No. 15) at ¶ 4.

2

as confidential and not readily discoverable through public sources.  Id. ¶ 14.

    The Defendants in this action are a married couple who reside in New York City and who are both partners in Crystal Nation LLC ("Crystal Nation"), which is engaged in the business of designing clothing for both men and women.[2]  Defendant Pucci worked as a sales director for Quadrille from February 8, 2008, until April 30, 2010.  Compl. ¶ 12; Pucci Aff. ¶ 4.  In the course of her employment Pucci had access to confidential information, including Quadrille's client lists, client details, and the identities of the manufacturers of Quadrille's clothing.[3]  Compl. ¶ 13.  Pucci was in charge of Plaintiff's clothing line accounts, but had access to the company's entire client data base, including clients for Quadrille's wallpapers and fabrics design line.  Id. ¶ 15.  On April 19, 2010,[4] Pucci submitted a letter of resignation stating that she was returning to Bulgaria, her country of origin, to care for her ailing father for an indefinite amount of time.  Id. ¶ 20; Pucci Letter.

    In June 2010, Pucci's replacement, Edward Guski ("Guski"), visited the office of one of Quadrille's manufacturers, specifically where Quadrille's women's clothing was being manufactured ("the workroom").  Compl. ¶ 22.  There, Guski allegedly noticed between eight and

---

[2] Quadrille's Complaint states that Defendants are partners in Crystal Nation LLC.  Compl. ¶¶ 3-4.  Defendants did not file an Answer in this case, and Defendant Pucci states in her affidavit only that she is "involved in the business of designing and marketing women's clothing at a place of business located at 178 Fifth Avenue, New York, New York, 10010."  Pucci Aff. (Dkt. No. 6-3) ¶ 6.  This is the address listed on Crystal Nation's website, which also lists both Defendants as partners in its company.  See http://www.crystalnation.com/contact.html; http://www.crystalnation.com/our_team.html.

[3] Quadrille also states that it treats the identities of its manufacturers as confidential in order to prevent competitors from using its original designs.  Compl. ¶ 16.

[4] The Complaint states that Pucci notified Plaintiff of her resignation on or about April 16, 2010; the letter of resignation is dated April 19, 2010.  Compl. ¶ 20; Pucci letter of resignation (Dkt. No. 1-1) ("Pucci Letter").

3

ten jackets with Quadrille's patterns labeled "Pucci," and the workroom's owner confirmed that those jackets were part of Pucci's new fashion line. Id. ¶¶ 23-24. In that same month, on June 14, 2010, Pucci was interviewed in Time Out New York and stated to her interviewer, "I make clothes for high-end, very conservative ladies. Custom clothes out of upholstery fabrics." Compl. ¶ 26; This Week in New York: Maria Pucci, 31, TIME OUT NEW YORK (June 14, 2010), http://newyork.timeout.com/things-to-do/this-week-in-new-york/73677/maria-pucci-31. According to its Complaint, Quadrille eventually learned that Pucci had set up Crystal Nation with Defendant Pucciariello while she was still working for Quadrille, and that they were using Quadrille's manufacturer to manufacture their clothing line using Quadrille's patterns. Compl. ¶ 28; Knott Aff. (Dkt. No. 15) ¶ 8. The Complaint also alleges that Defendants are attempting to poach Quadrille's clients using the lists and details of Quadrille's clients known to Pucci by virtue of her previous employment with Quadrille. Compl. ¶¶ 29-30; Knott Aff. ¶ 8. Additionally, Plaintiff claims that Defendants have held trunk shows using Quadrille's hostesses – also known only to them through Pucci's employment with Quadrille – and inviting Quadrille's private clients to attend these shows. Compl. ¶ 31; Knott Aff. ¶¶ 8-9. Plaintiff filed the present action in state court on October 22, 2010.

## III. DISCUSSION

Defendants contend that removal is required in this case because Plaintiff's claims, all of which allege violations of New York state law, are preempted by federal law, namely, the United States Copyright Act. TOD Mot. at 1, 6, 9-17; Defs.' Response at 2, 16. Plaintiff argues that the Court should remand the action because its Complaint presents no questions of federal law and the Copyright Act does not preempt its state law claims. Cross-Mot. at 6-9; Pl.'s Reply at 2-7. For the following reasons, the Court finds that none of Plaintiff's claims are preempted by the Copyright

Act and therefore remands this case to state court for lack of subject matter jurisdiction.

### A. Standard of Review

A party may remove a case to federal court from state court if the case originally could have been brought in federal court. 28 U.S.C. § 1441(a). Either complete diversity of citizenship between the parties where the amount in controversy is $75,000 or greater, or a question arising under federal law, is required to establish federal jurisdiction. Id. § 1331, 1332(a). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Id. § 1447(c).

On a motion to remand, "the defendant has the burden of establishing that removal is proper." United Food & Commercial Workers Union, Local 919, AFL-CIO V. CenterMark Properties Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994). The Court "construes all factual allegations in favor of the party seeking remand." O'Brien & Gere Ltd. v. Bus. Software Alliance, No. 5:07-CV-1174, 2008 WL 268430, at *3 (N.D.N.Y. Jan. 30, 2008). Additionally, "[a]ny doubts regarding the propriety of removal are resolved in favor of remand, and 'federal courts construe the removal statute narrowly.'" Anwar v. Fairfield Greenwich Ltd., 676 F. Supp. 2d 285, 292 (S.D.N.Y. 2009) (quoting Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994)).

### B. Preemption and the Copyright Act

Because the parties do not contest that diversity of citizenship is lacking in this case, the Court must find a federal question present in order to exercise subject matter jurisdiction here. "Where the removal is based upon federal question jurisdiction, the 'well-pleaded complaint rule' governs." Panizza v. Mattel, Inc., No. 02 CV 7722, 2003 WL 22251317, at *2 (S.D.N.Y. Sept. 30, 2003) (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)). The well-pleaded complaint

5

rule requires that a federal question appear on the face of a properly pled complaint. Travelers Indem. Co. v. Sarkisian, 794 F.2d 754, 758 (2d Cir. 1986) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)).  While this rule "permits [a] plaintiff to avoid federal jurisdiction by exclusively relying on state law," Panizza, 2003 WL 22251317, at *2, "in certain limited circumstances a plaintiff may not defeat removal by clothing a federal claim in state garb, or, as it is said, by use of artful pleading." Travelers Indem., 794 F.2d at 758 (internal quotation omitted).

Such circumstances include cases where federal preemption of state law is at issue. Id. "Preemption does not necessarily confer federal jurisdiction, since it is generally a defense to [a] plaintiff's suit and, as such, it does not appear on the face of a well-pleaded complaint." Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 304 (2d Cir. 2004) (citing Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987)).  However, when the doctrine of "complete preemption" applies, "the preemptive force of federal law is so 'extraordinary' that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Briarpatch, 373 F.3d at 304 (quoting Caterpillar, 482 U.S. at 393).  "[O]nce a district court determines that a state law claim has been completely preempted . . . the court must then dismiss the claim for failing to state a cause of action." Briarpatch, 373 F.3d at 309.

The complete preemption doctrine applies to state law claims preempted by the Copyright Act because that Act "both preempts state law and substitutes a federal remedy for that law, thereby creating an exclusive federal cause of action." Id. at 305 (citing Richard H. Fallon, Jr. *et al*., The Federal Courts and the Federal System 22 (5th ed. Supp. 2003)); see also Integrative Nutrition, Inc. v. Acad. of Healing Nutrition, 476 F. Supp. 2d 291, 295 (S.D.N.Y. 2007).  The Second Circuit has

articulated a two-part test for determining whether the Copyright Act preempts a state law claim: (1) The particular work to which the claim applies must fall within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103; and (2) the claim must seek to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights protected by copyright law under 17 U.S.C. § 106. Briarpatch, 373 F.3d at 305. The latter prong is also referred to as the "general scope requirement." Id.; White House/Black Market, Inc. v. Cache, Inc., No. 10 Civ. 5266, 2010 WL 2985532, at *3 (S.D.N.Y. July 27, 2010).

*1. Subject Matter of Plaintiff's State Law Claims*

To the extent that Plaintiff's claims relate to Defendants' alleged misappropriation of its client lists and the identities of its manufacturers to solicit business for Crystal Nation, such information clearly does not fall under the type of works protected by the Copyright Act. See 17 U.S.C. § 102 and § 103. Plaintiff's clothing pattern designs, on the other hand, fall within this category. The Second Circuit has held that clothes are not protected by the Copyright Act, but "fabric designs . . . are considered writings for purposes of copyright law and are accordingly protectible." Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1002 (2d Cir. 1995) (citations and quotations omitted). Moreover, "the scope of preemption under § 301 is not the same as the scope of copyright protection" and therefore "the former is in fact broader than the latter." Stewart v. World Wrestling Fed'n Entm't, No. 03 CV 2468, 2005 WL 66890, at *3 (S.D.N.Y. Jan. 11, 2005). Accordingly, district courts in this Circuit have also found that "clothing designs, though generally not copyrightable, nevertheless do fall within the subject matter of copyright for preemption purposes." Id. at *3 n.3 (citing Morris v. Buffalo Chips Bootery, Inc., 160 F. Supp. 2d 718, 721 (S.D.N.Y. 2000)); cf. White House/Black Market, Inc., 2010 WL 2985532, at *3-4 (addressing only

7

general scope requirement for claim involving copy of clothing designs). The Court therefore concludes that Plaintiff's clothing designs satisfy the subject matter requirement for complete preemption.

### 2. General Scope Requirement and the "Extra Element" Test

The Copyright Act "preempts only those state law rights that may be abridged by an act which, in and of itself, would infringe one of the exclusive rights provided by federal copyright law." Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 716 (2d Cir. 1992) (quotation omitted). However, "when a state law violation is predicated upon an act incorporating elements beyond mere reproduction or the like, the [federal and state] rights involved are not equivalent and preemption will not occur." Harper & Row Publishers, Inc. v. Nation Enters., 723 F.2d 195, 200 (2d Cir. 1983), rev'd on other grounds, 471 U.S. 539 (1985). Thus, in order to meet the general scope requirement necessary for a finding of preemption, Plaintiff's state law claims "must involve acts of reproduction, adaptation, performance, distribution or display . . . [and] must not include any extra elements that make it qualitatively different from a copyright infringement claim." Briarpatch, 373 F.3d at 305. "[E]lements such as awareness or intent, which alter the action's scope but not its nature," do not constitute extra elements that would permit a state law claim to proceed without being preempted by the Copyright Act. Computer Assocs., 982 F.2d at 717. In order to determine whether Plaintiff's state law claims are preempted by the Copyright Act, the Court must consider each individual claim under New York state law to determine whether any contain "extra elements" that would remove them from that Act's preemptive scope.

#### a. Unfair Competition

To sustain a claim of unfair competition in New York, a plaintiff must establish that the

8

defendant: (1) "misappropriated the plaintiff[]'s labors, skills, expenditures, or good will"; and (2) "displayed some element of bad faith in doing so." Abe's Rooms, Inc. v. Space Hunters, Inc., 833 N.Y.S.2d 138, 140 (N.Y. App. Div. 2007). In applying the "extra element" test to such claims, the Second Circuit has held that unfair competition claims "grounded solely in the copying of a plaintiff's protected expression are preempted by section 301." Computer Assocs., 982 F.2d at 717. However, "unfair competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets have been held to satisfy the extra-element test and avoid § 301 preclusion." Kregos v. Assoc. Press, 3 F.3d 656, 666 (2d Cir. 1993); see also Computer Assocs., 982 F.2d at 716.

In this case, Plaintiff's unfair competition claims fall into the latter category. Plaintiff's unfair competition claims against Defendants arise out of Defendant Pucci's alleged breach of the confidential relationship that she had with Plaintiff as an employee, and out of both Defendants' alleged misuse of Plaintiff's trade secrets to compete with Plaintiff. See Compl. ¶ 45 (alleging that Defendants engaged in unfair competition when they "in bad faith, used the plaintiff's manufacturer . . . to use the plaintiff's patterns without authorization"). The bases for Plaintiff's unfair competition claims here suffice as the "extra element" present to remove these claims from the preemptive reach of the Copyright Act. See Briarpatch, 373 F.3d at 306; cf. Kregos, 3 F.3d at 666 (finding no extra element in unfair competition claim based on alleged false designation of ownership in defendants' copyright form).

### b. Misappropriation of trade secrets

Plaintiff's misappropriation of trade secrets claims are also not preempted by the Copyright Act. Under New York law, in order to prevail on such a claim, a plaintiff must show that (1) it

9

possesses a trade secret and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means.  DoubleClick Inc. v. Henderson, No. 116914/97, 1997 WL 731413 (N.Y. Sup. Ct.  Nov. 7, 1997) (citing Integrated Cash Mgmt. Serv., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir. 1990)).  Claims for misappropriation of trade secrets are generally not preempted by the Coypright Act because they "often are grounded upon a defendant's breach of a duty of trust or confidence to the plaintiff through improper disclosure of confidential material."  Computer Assocs., 982 F.2d at 716.  As the Second Circuit has explained, "The defendant's breach of duty is the gravamen of such trade secret claims, and supplies the extra element that qualitatively distinguishes such trade secret causes of action from claims for copyright infringement that are based solely upon copying."  Id.; see also Pentagen Tech. Int'l, Ltd. v. CACI Int'l, Inc., Nos. 93 Civ. 8512, 94 Civ. 0441, 94 Civ. 8164, 1996 WL 435157, at *15 (S.D.N.Y. Aug. 2, 1996) ("The Copyright Act generally does not preempt claims for misappropriation of trade secrets, because those claims include the requisite extra element – breach of a duty of confidentiality.").

Where, as here, a complaint alleges that a defendant disclosed a former employer's confidential information in breach of a fiduciary duty owed to that employer, and that another defendant aided and abetted this breach, at least one other district court in this Circuit has found that the extra element test is satisfied for a plaintiff's misappropriation of trade secrets claim against both defendants.  Compl. ¶¶ 39-42; White House/Black Market, 2010 WL 2985232, at *4.  See also Gusler v. Fischer, 580 F. Supp. 2d 309 (S.D.N.Y. 2008); cf. Kregos, 3 F.3d at 666 (finding the extra element test not satisfied where misappropriation of trade secrets claim based solely on alleged copying of protected expression in copyright form).  The Court likewise concludes that Plaintiff's

10

Complaint alleges an "extra element" of bad faith on the part of Defendants in misappropriating Plaintiff's clothing patterns. Plaintiff's misappropriation of trade secrets claims are therefore not preempted by the Copyright Act and may proceed accordingly.

                        c. Tortious interference with business relations and prospective economic advantage

Because the standards for Plaintiff's tortious interference claims are identical under New York law, the Court addresses them in tandem in determining whether they are preempted by the Copyright Act. To establish a claim based on tortious interference with business relations or with prospective economic advantage, a plaintiff must demonstrate: (1) the existence of a business relationship with a third party; (2) defendant's interference with the relationship; (3) that the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair or improper means; and (4) that the plaintiff sustained damages. Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006) (defining standard for tortious interference with prospective economic advantage; Icahn v. Lions Gate Entm't Corp., 31 Misc.3d 1205(A), 2011 WL 1233362, at *11 (N.Y. Sup. Mar. 30, 2011) (citing Carvel Corp. v. Noonan, 3 N.Y.3d 182, 190 (N.Y. 2004)) (defining standard for tortious interference with business relations). The Second Circuit has held that where "the act of unauthorized publication" of a protected work is the gravamen of a plaintiff's tortious interference claim, then that claim is preempted by the Copyright Act. Harper & Row, 723 F.2d at 201; see also Miller v. Holtzbrinck Publishers, LLC, No. 08 Civ. 3508, 2008 WL 4891212, at *1-3 (S.D.N.Y. Nov. 11, 2008); Netzer v. Continuity Graphic Assocs., Inc., 963 F. Supp. 1308, 1322-23 (S.D.N.Y. 1997) ("[C]laims for tortious interference that are based on allegations of unauthorized exploitation of coyprighted material are preempted by federal copyright law.").

11

However, a fair reading of the Complaint shows that Plaintiff's allegations of tortious interference are grounded not merely in unauthorized copying of a protected expression, but in Defendant Pucci's alleged breach of duty of confidentiality that she owed to Plaintiff, and in Defendant Pucciariello's alleged aiding and abetting of that breach. See Compl. ¶¶ 52-61. According to Plaintiff's Complaint, Defendants had access to Plaintiff's clothing patterns only by virtue of Defendant Pucci's employment with Plaintiff, and used that information to the detriment of Plaintiff's relationships with its clients and its overall economic advantage. See id. ¶¶ 13-17, 51-61. Defendant Pucci's alleged breach of duty in doing so, and Defendant Pucciariello's alleged aiding of her efforts, are the gravamen of Plaintiff's claims, and therefore "suppl[y] the extra element that qualitatively distinguishes such trade secret causes of action from claims for copyright infringement that are based solely upon copying." Computer Assocs, 982 F.2d at 717; see also White House/Black Market, 2010 WL 2985232, at *4; cf. Miller, 2008 WL 2891212, at *1-3 (tortious interference claims preempted where basis for suit lay in allegedly unlawful copying and publication of manuscript); Netzer, 963 F. Supp. at 1322-23 (tortious interference claims preempted where suit based on alleged copying of comic strip character). Plaintiff's tortious interference claims are therefore not preempted by the Copyright Act and may proceed accordingly.

### d. Breach of fiduciary duty claim

For the reasons already discussed above, the Court also finds that Plaintiff's claim against Defendant Pucci for breach of fiduciary duty satisfies the "extra element" test and is thus not preempted by the Copyright Act. See Briarpatch, 373 F.3d at 306; Computer Assoc., 982 F.2d at 717; White House/Black Market, 2010 WL 2985232, at *4.

### e. Breach of implied contract claim

12

Lastly, Plaintiff claims that Defendant Pucci breached an implied contract under which "Pucci, in consideration of employment, would not use the plaintiff's patterns to establish a competing business . . . ." Compl. ¶ 78. This claim too is not preempted by the Copyright Act. "State law breach of contract claims are generally not preempted by the Copyright Act, so long as the claim is based on allegations of a contractual right not existing under copyright law." Sharp v. Patterson, No. 03 Civ. 8772, 2004 WL 2480426, at *8-9 (S.D.N.Y. Nov. 3, 2004) (citations and quotations omitted). In this case, the contractual right Plaintiff apparently seeks to enforce is its right not to have its patterns used by a former employer "to establish a competing business." Compl. ¶ 78.

In Gusler v. Fischer, another district court in this Circuit found that a breach of contract claim was not preempted because it was based upon the defendant's alleged breach of his duties under a non-disclosure agreement he had formed with the plaintiff as a business partner. 580 F. Supp. 2d 309, 319 (S.D.N.Y. 2008). Without making any findings on the merits of Plaintiff's claim, the Court concludes that the implied contract Plaintiff alleges it had with Defendant Pucci is akin to a non-disclosure or non-competitive agreement typically formed between employers and employees. If such an implied contract did in fact exist between Plaintiff and Defendant Pucci – an issue that the Court does not reach here – a breach of such an agreement would constitute a breach of a promise to maintain confidentiality of an employer's information accessed during the course of one's employment and not to use that information to compete with that employer in the future.

The Court finds persuasive the conclusion reached by the court in Gusler: A breach of contract claim premised upon an alleged breach of duties under a non-disclosure agreement "is premised on the existence of . . . allegations beyond mere reproduction" and is therefore

13

"qualitatively different from [a] copyright infringement claim." Id.; cf. Canal± Image UK Ltd. v. Lutvak, No. 10 Civ. 1536, 2011 WL 1158439, at *17-21 (S.D.N.Y. Mar. 29, 2011) (breach of contract claim preempted where plaintiff alleged that defendants had usurped its right to adapt a film); Stewart, 2005 WL 66890, at *6 (breach of implied contract claim not preempted where plaintiff alleged that defendant made implied promise to pay for the value of plaintiff's ideas); Sharp, 2004 WL 2480426, at *14-15 (breach of contract claims not preempted where plaintiff alleged defendant promised to write portions of book in exchange for pay). Accordingly, Plaintiff's breach of contract claim against Defendant Pucci is not preempted by the Copyright Act.

### C. Quadrille's Request for Attorney's Fees

Having found that none of Plaintiff's claims are preempted by the Copyright Act, the Court finds that it lacks subject matter jurisdiction over this action and remands the case to state court pursuant to 28 U.S.C. § 1447(c). Quadrille has also requested that the Court exercise its discretion under that statute to require Defendants to pay "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Id.; Cross-Mot. at 9. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Although the Court finds that remand is warranted here, it does not conclude that Defendants' Motion was objectively unreasonable, or that any unusual circumstances exist that would warrant a grant of attorney's fees here. Quadrille's request for attorney's fees is therefore denied.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Cross-Motion to remand (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED**, that Defendants' Motion to transfer or dismiss (Dkt. No. 6) is **DENIED** as moot; and it is further

**ORDERED**, that Plaintiff's request for an award of attorney fees is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:   August 24, 2011
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge